I'm Gilbert Levy, representing the appellant World Wide Video. I'd like to reserve three minutes of my time, if I may. There are primarily two issues before the court in this appeal. First of all, whether the district court erred in granting summary judgment in favor of the city on the question of whether or not the ordinance was enacted in furtherance of a right to retail-only adult businesses, and secondly, whether or not the ordinance is overly broad as applied to mixed businesses which do not hold themselves out to the public as being sexually oriented businesses or businesses which have, as their stock and trade, only a small percentage of adult material. When you say retail-only, Mr. Levy, are you excluding one of the locations at all? I am, Your Honor. I am excluding the location that has the facilities for on-premises viewing. My arguments do not pertain to that type of business in the way I framed the issue. Even though one of the locations has arcades, we're not suggesting for purposes of this appeal that there is no need for a retail-only location. There is no evidence that businesses with arcades don't cause secondary effects. Okay. So as to that one, you would have to concede that the city could properly enact an ordinance attempting to cause secondary effects. Yes. Yes. I have a question about the extent of your evidence and how it matches to the city's particulated reasons. As I understand your evidence, it casts doubt on the alleged secondary effect of increased criminal activity. If your evidence is believed, there's really no link at all between the location of the businesses and alleged increases in criminal activity. However, that's not the only secondary effect on which the city has relied. There's also the issue about protection of minors. There's also the issue about property values. And I'm wondering what, if anything, in your evidence casts doubt on those portions of the rationale. And the second piece of the question is, if there are secondary effects that your evidence doesn't address, is that fatal to your claim? I would — if there are secondary effects that my evidence doesn't address, I would concede that I might have some problems with my claim. But I would submit, Your Honor, that we did address the other secondary effects. There was a property value study in Mr. McLaughlin's materials that we submitted in opposition to the motion for summary judgment, which indicated that the retail businesses, in fact, none of the adult businesses, were responsible for property values. And the issue with respect to minors was pornographic litter, whether or not these businesses were responsible for pornographic litter. The code inspector, Mr. Emerson, in his deposition testified that with respect to the retail-only businesses, he did not hear any complaints regarding pornographic litter. The persons who manned the neighborhood police stations who field all of the citizen complaints did not hear significant complaints about pornographic litter. The neighbors who were interviewed in the private investigators survey didn't complain about pornographic litter. So there was substantial evidence presented in opposition to the city's motion for summary judgment that pornographic litter was not a problem with respect to the retail-only businesses. And we submit that, at the very least, that was sufficient to rebut the city's evidence and raise material issues of fact. We assume, for purposes of our analysis, that the applicable test is that which is articulated in Justice O'Connor's plurality opinion in Alameda Books with respect to the substantial governmental interest issue. The city's evidence has initially afforded great deference, but if the plaintiff comes forward with evidence to cast doubt on the city's evidence, then it becomes a genuine issue of material fact and one for the fact-finder and is not appropriately resolved on summary judgment, as it was in this case. We rely, first of all, on Alameda Books itself. I would point out that in Alameda Books, the parties challenging the Los Angeles Ordinance did not present any affirmative evidence, as we did in this case, but simply relied on deficiencies in the city's study. And nevertheless, the Supreme Court sent the matter back to the district court for review, and in this case, we did present considerable affirmative evidence to rebut the city's claims. The city's evidence, I think, roughly falls into two categories. There were a series of studies which were kind of generic studies and did not deal specifically with this type of business, and then there were citizens who provided testimony to the city council and then provided declarations in support of the city's motion for summary judgment. With respect to the generic studies, we presented expert testimony that these studies did not deal specifically with this type of business, and with respect to the citizen testimony and the anecdotal evidence, our submissions raised questions about their credibility and also tended to show that the claims that they were only businesses simply, their claims simply weren't true. We maintain that this was sufficient to cast direct doubt on the city's evidence and to require a trial. Mr. Levy, is Spokane's regulatory regime similar to the one that Federal Way employed that was before our panel in the Deja Vu effort, Federal Way Inc. versus City of Federal Way Inc.? Mr. Levy Yes, as far as I know, although I haven't analyzed the, have not analyzed carefully the regulatory regime of the Federal Way Ordinance. I think, though, the difference between this case and the Federal Way Ordinance is that the plaintiff in that case was a nightclub, was not a retail-only business, and having read the Court's opinion in the Federal Way case, I'm confident also that the plaintiff in that case, Deja Vu, did not present affirmative evidence in support of its constitutional challenge. That was a case like Center for Fair Public Policy, which is another recent case of this Court, where they were simply claiming deficiencies in the legislative record. Well, it's theoretically, of course, it's possible that an identical ordinance would be okay in one place and not in another if, in the latter instance, it was not supported by reality of the alleged secondary effects. It does seem to me, Judge Clifton, that if... Judge Graber. But I'll take credit for hers. Alameda Books does throw the secondary effects issue open to contest in the case of an individual ordinance. If there has to be some evidence in the legislative record, parties challenging the ordinance have a right to come forward with evidence rebutting the evidence in the legislative record. If they do come forward with additional evidence on an ordinance-by-ordinance basis and it casts direct doubt on the city's claims, then it becomes an issue of fact for the FactFinder. And that's... Does it throw out all the language in the Supreme Court opinions about the deference that we owe the legislative bodies that consider this evidence as the justification for enacting the rule? No, it doesn't, and I'm not suggesting that Alameda Books changes the legal landscape or changes Renton. But it does, at least in one small way, that even though the legislative body is entitled to considerable deference and no court has indicated otherwise, it does seem to recognize that plaintiffs have a right to challenge the city's evidence. And if they do come forward with enough evidence to challenge the city's evidence, then it creates an issue of fact for the FactFinder, where presumably the FactFinder would still defer to the evidence but would nevertheless require some credible evidence to support the city's claims. And when I say credible evidence... So would this be more of almost an APA-type review, that we would be looking for arbitrary and capricious rulemaking by the city council in the face of the evidence of record when the ordinance was enacted? I'm not... I don't think that we'd be sitting looking at whether or not a preponderance of the evidence had established that the litter came from one of your clients' retail businesses. Well, I think the correct roadmap and the one that I would suggest to this Court is the opinion of the Eleventh Circuit in Peekaboo Lounge, where the Eleventh Circuit says there has to be credible evidence, some credible evidence supporting the city's claims. In this case, we're challenging the credibility of the city's anecdotal sources. Credibility is an issue for the FactFinder, and that just, that does suggest, to me at least, that it would be inappropriate for a court to resolve the question on summary judgment. So you're, what you're asking us for is not a definitive ruling about the ordinance. You're asking to go back for a trial about the ordinance. Is that right? No. I'm at, well, on the first issue, the summary judgment issue, I'm asking for a trial. But I'm also suggesting that the ordinance is overbroad, and if I can just spend a... But you do have some other... Yeah. I mean, with respect to the first issue, I'm not asking for a definitive ruling. I'm simply asking for a trial. And the point of the trial would be for the Finder effect to determine whether there is any credible evidence to support the city's assertion of secondary effects. And if the Finder effect concludes that it's pretextual, that there are no, there is no credible evidence of secondary effects, then you would ultimately... Well, I'm, yes, I'm entitled to a trial on the credibility of the anecdotal sources of information. And if the fact were to find that evidence credible, that would tend to support the city's ordinance. And I'm not suggesting otherwise, but at least I should get my day in court. If I can just spend a moment on the second issue, because I think it's equally important to the first. This ordinance applies on its face to a business which devotes a substantial portion of a portion of its business to sexually oriented materials. So if you hypothesize a video store which sells a thousand tapes and it has a separate room with a hundred tapes and a substantial or significant number of the hundred tapes are sexually oriented material, that business blockbuster or a main Hollywood video would be required to relocate to the heavy industrial zone. And all the businesses considered by Spokane were businesses which dealt exclusively in adult material. There was no evidence in the legislative record that this type of mixed use or small percentage business generated secondary effects. So Alameda Books was a case where there was some evidence in the legislative record to support the restriction. With respect to a mixed business, this is a no evidence case. It's more analogous to this Court's decision in Tallis v. San Bernardino or the Fifth Circuit in Encore Videos or the Washington Supreme Court in Worldwide Video. I'd like to reserve the rest of my time. Thank you. Okay. Thank you. We'll hear from Mr. Smith. Good morning. May it please the Court. My name is Stephen Smith. I'm from Preston Case in Ellis. I represent the City of Spokane in this case. I intend to spend most of my time this morning addressing the main issue in the case and that is whether the City of Spokane had sufficient evidence of adverse impacts to justify the zoning ordinance setting back adult retail businesses from sensitive uses. I would like to spend a little bit of my time addressing the overbreadth issue, particularly the issue that Mr. Levy raised for the first time in his reply brief and not in the trial court below, and that is whether a portion of a portion of a business is regulated by this ordinance. If that's the case, hasn't he waived that argument? I believe he has waived the argument. I would like to point out the fact that this particular argument that was raised for the first time in the reply brief was not raised below, and he's also raised it again in oral argument. So I want to make sure that I cover that because I haven't had a chance to do so yet. I think it's important to spend one minute to discuss what I believe are pretty much undisputed facts to put this in the proper context. As the panel knows, there were two specific zoning ordinances enacted by the City of Spokane. One established a setback between adult retail uses and certain sensitive uses like residential zones, places of worship, schools, and parks, and then the second ordinance provided a specific part of the city in addition to other parts of the city in which businesses could relocate so that there clearly was enough places for them to relocate. In enacting the ordinance, the city had a variety of types of evidence at the evidentiary stage or the legislative stage. They had input from neighbors of the neighborhood, and they relied on court cases. These were the three types of evidence that the Supreme Court ---- We've read your briefs. Yes. We're pretty familiar with what was considered. Could you go right to the heart of it and tell us whether Alameda Books has changed the legal landscape in the fashion that Mr. Levy urges so that he's right that on summary judgment on this record, we really can't pick and choose that we've got to send it back for further trial? I hear two questions. First, did it change the legal landscape? The answer is clearly not. If you look at the courts of appeals that have looked at Alameda since the decision and review the decisions, the opinions themselves in Alameda, clearly the landscape has not been changed. And a panel of this court in the Maricopa County case said, no, just like the Tenth Circuit and the Fifth Circuit, this did not change the landscape that was established in Renton v. Playtime Theaters. There's substantial deference. There may be a couple of little twists, and I'll get to that in just a minute. Well, the couple of little twists are that it seems to me that reading the Supreme Court's directions to the lower courts, that if the city proffers what appears to be reasonable evidence, but there's evidence contradicting it and casting doubt on the validity of what is relied upon, and affirmatively demonstrating, if it were believed, that the proffered reasons are contextual, then it becomes an issue of fact for a trial or a fact. There's seems to be a recognition in all of the Supreme Court's cases that depending on what is shown, there could be an issue of fact for a trial. I have two responses to that. First, the Alameda Books case involved two separate ordinances. The first ordinance was a garden variety zoning ordinance, just like what we have here. The second ordinance was an ordinance that required two different types of businesses in the same locale to separate. All nine justices in Alameda Books said based upon the studies in that particular case, you could have a separation of adult uses from sensitive uses. And that's exactly what we've done here. But there was also a recognition in that case that there had not been affirmative evidence presented to cast doubt upon the things that the city relied on to create that separation. Yes. So do you agree at a minimum that if a city's reasons are pretextual only, that they don't have a basis in fact, that even the deference that is otherwise owed goes away? I agree completely. If it's pretextual only, there's a serious problem. How does someone demonstrate that? If there's evidence casting doubt, isn't there something for a trial? Well, first of all, you've got to go back to the question that you asked, Mr. Levy. If there are several specific adverse impacts that are addressed or several different types of evidence, under the Charter Communications Decision of this circuit, you've got to address all of them. I know he concedes that, as I understand it. Okay. And I think that if any of the legitimate reasons, otherwise legitimate reasons given by a city is supported, then the ordinance is okay. The city doesn't have to be right about all three, only about one. But if there's – I want you to assume for the purpose of my question that there is evidence casting doubt on the validity of all three of the reasons. And that's why I need to address those, because the record in this case is that there was not evidence casting doubt on all three. Okay. I'm still trying to have you talk to me about the theory behind all this, though. Okay. Right. For the sake of the question, I'd like you to assume, and I know you don't concede, but I'd like you to assume that there is evidence casting significant doubt on each of the reasons given by the city. In that circumstance, would there not be an issue for a trial? Yes. Okay. Yes. So then really what we're looking at here is, in a sense, an ordinary summary judgment kind of question, which is, has there been a significant material issue of fact created by the information that's been presented? Right. And I think you have to look at it in this context. The context of charter is that you've got to place into doubt each one of the specific interests involved and each one of the types of evidence that contest that. Because if they just ignore a type of evidence, then I think it's clear that the city reasonably relied on that type of evidence. And that's where you get to the question that Judge Tallman asked initially is, what is the role of the court? The court is not a truth-finding function. I mean, the court is not to decide whether or not pornographic litter does adversely impact neighbors or minors or whether it doesn't. The court's role under Alameda Books and the Maricopa County case is looking at the evidence that the city saw at the time of its legislative enactment. Was it reasonable to assume that that evidence was of sufficient adverse impact and that the ordinance was reasonably directed to address those adverse impacts? If there were an issue for trial, that would be your definition of the issue for trial. Yes. In other words, I don't know if abusive discretion is the right standard, but did the city reasonably rely on each of the items of evidence or any one of the items of evidence at the legislative stage? And what I was about to say when I was presenting the facts, and maybe this is the only thing that really is relevant, is that at the legislative stage, worldwide video introduced no evidence at all. When we got to the summary judgment stage, they picked and chose among the types of evidence that they looked at. Let's look first at the types that the Papps v. Erie case said that you could rely on. You could rely on your own experience. You could rely on studies from other cities. You could rely on court cases. Now, as to the experience of the city's residents, I don't believe that any serious doubt was placed upon any of that evidence under the summary judgment standard announced in the Anderson, Solitex, and Matsushita trilogy of the U.S. Supreme Court in 1986. In order to raise a genuine issue of material fact, you must come forward with competent evidence sufficient to convince a reasonable trier of fact. We had five declarants. One was a former employee of worldwide video. One was a code enforcement officer. And three neighbors. They testified under oath. We saw pornographic litter. We saw public sexual acts. We saw prostitution. We saw used condoms. We saw syringes. Back to the retail-only establishment? Yes. Yes. It's clearly in the record. Now, as to that, how did they raise a serious doubt sufficient to convince a reasonable trier of fact? They sent out an investigator, Bryce Kane, whose instruction was, we don't want you to interview the people that we know are going to give us bad examples of conduct. We just want you to interview the other folks. And if you find bad evidence, we don't want you to include that in your report. He went out and interviewed folks, some of whom were a block, two blocks away, and they said, well, we don't have any problem with that business. We don't see any issue. I don't think that is sufficient to raise an issue of fact to any reasonable trier of fact. I know this Court had some problems with an analogy earlier, and I know I'm taking a risk here, but it would be as if someone testified to, on September 1st at noon, I saw person A assault person B, and then you had other witnesses that said, well, I was at the same place on September 4th, and I didn't see any crime committed. The testimony that they produced did not negate the testimony of the folks that said, I saw this, I saw this, and I saw that. So under the Anderson versus Liberty Lobby standard, they haven't raised an issue of material fact. That's the first type of evidence, and it applies both to the deposit of litter and to the sexual conduct on the premises, adult retail-only businesses. The second type of evidence are the studies. Now, I'll concede that the studies are not a model of clarity in saying whether they're retail-only or not retail-only. The district court, in its decision, went through and picked out the cases that it thought dealt with retail-only cases, and we tried to do the same in our brief as well. There were studies from Indianapolis and St. Paul that were identified as dealing with retail-only businesses. There were also three studies that were cited in the Stringfellow's case dealing with New York City adult businesses. There were more than 250 businesses in New York City. Some of them had to have dealt with retail-only establishments themselves. So I think the studies are also sufficient evidence, and what the Erie versus Papps case said is that you can't controvert a study just by commissioning your own study and saying, I disagree with it, because the ultimate goal is not truth-finding. The ultimate goal is when it enacted the ordinance, did the city reasonably rely on this? Well, I guess the other thing I heard from Mr. Levy was I think he's trying to draw a distinction between those businesses with adult businesses which have live dancers, strip clubs, on-site video viewing booths, as opposed to a bookstore or a video store that just rents or sells. He is, and he can't do it. I don't know that any of the studies have been that specific. They talk about bookstores and video stores. What they don't say is that's all that we sell. They don't say that there's no on-premises viewing. That's how the district court read it. That's how I read it. That's how the courts in ZJ Gifts, ILQ Investments, and Stringfellows all read it. And that leads me to the third item of evidence, and the Papps case says you can rely on court decisions. It's reasonable for a municipality to look at a judicial decision that says you as a city can separate sensitive uses from adult retail-only businesses, and all three of those cases dealt with retail-only businesses. So in answer to your question, not only did they not address properly, I think, the so-called anecdotal evidence of the five witnesses, they didn't address the court cases, and the only way that they addressed the study is by saying we've got our own study to contradict it. I think they missed on all three. Why isn't that cast doubt on the validity of the original study if there's another equally valid study that says the first one is hogwash? Because I think what the court in Erie was saying is that you've got to put yourself in the seat of the legislator at the time. If at the time of enactment there was a study that came that was produced and said, well, these other studies are invalid, or if the court case that they were relying on had been reversed, then you would put into doubt. None of that was placed before the city. And some of the reasons that in this particular case the McLaughlin study goes off on and saying these other studies are invalid is, well, they're not based on empirical evidence. Maricopa County says that makes no difference at all. He says some of the evidence is anecdotal. Maricopa County says that's irrelevant. A lot of the ordinances that we've approved are based upon anecdotal evidence. I've got one minute left, and I want to address the amortization issue because I didn't have a chance to do it in my brief. As I understand Mr. Leidy's argument, first of all, I want to say that this particular definition has been applied for 25 years. It was applied in the American Mini Theaters case. It was applied in the Alameda Books case. The two cases we've found that squarely address the issue found it constitutional. Not only that, but this is particularly the type of ordinance that is properly reserved to a state court for eliminating construction, because Mr. Leidy's not arguing that it applies to his client. He's saying it applied to some other client out there that it might be overbroad. He's provided no authority that supports that with respect to this ordinance. The issue that he raised in his responsive brief is that he said that the language of the ordinance that talks about a portion of a building somehow incorporates a mainstream like Hollywood video or blockbuster video. That's not what the ordinance says at all. The ordinance says that an adult retail establishment, whether it's located in a stand-alone building or whether it's located in a portion of a building like a strip mall or a shopping center, has to have a substantial or significant portion of its stock and trade. That's all it says. That has been upheld and there's no basis for reversal. Just in summary, do you have another question? Go ahead. In summary, the city of Spokane residents have put up with this behavior long enough. The ordinance hasn't been enforced. They're awaiting the decision of this court. I think the decision of the trial court should be affirmed. Thank you very much. Just before you leave, so the businesses are still operating on Sprague and Division and all the others? Other businesses have relocated into proper zones. But Worldwide Video is still operating in the same location? To the best of my knowledge, yes. Mr. Levy, we'll give you a couple of minutes for rebuttal here. Okay. Just briefly, the businesses are still in existence, but they're no longer operating as adult businesses within the city of Spokane's definition of an adult business. So the businesses that existed before the ordinance passed are no longer in existence. So they're not adult businesses. They're different types of adult businesses. They're non-adult, is my understanding. So they can stay in the same locations? If they change the nature of what they sell. If they change the nature of what they sell. With respect to the raise the issue the first time in my reply brief, in our opening brief and in the district court, we argued that the ordinance was overbroad because it applied to businesses which had not been considered by the city of Spokane in enacting the ordinance. In response, the city raised the argument, well, to the extent that it may be overly broad, it's susceptible to a narrowing construction. The point about a portion of a portion was in response to the city's argument that certainly that portion of the definitional section of the ordinance is not susceptible to a narrowing construction. But I believe that the basic theory has been consistently argued throughout this case, that the ordinance on its face applies to businesses for which there is no evidence showing that they're responsible for secondary effects. Has any Washington appellate court opined on this particular issue? The only thing that comes close is the worldwide video versus Tukwila case where the court said that 10% it's overbroad. And my argument, and I did consistently argue throughout, that this ordinance is in the definitional section of this ordinance would apply to a business selling 10% of it. Doesn't that case, though, suggest that the State courts would be willing to employ a narrowing construction if that were required to maintain custody? I'm sure they would, but my only question is whether or not the language in this ordinance is susceptible to a narrowing construction. I mean, I don't know how a State court would decide what significant means or what the legislator intended when it used the word significant. And also I think the portion of a portion language is pretty clear and unambiguous and not susceptible to a narrowing construction. If a portion of the building contains material and a substantial or significant portion of that portion is adult material, then the ordinance applies. There are cases upholding the substantial and significant language, right? There are also cases throwing out segment or section, which are cited in. How do you think Alameda Books would change the prior jurisprudence saying that substantial and significant is not? I don't know that it would. I don't know that it would. Just briefly going back, with respect to the anecdotal evidence, which cities with the three neighbors, we believe that we cast doubt on their testimony. The three neighbors had been recruited by the local anti-pornography organization. None of the claims that they were making about horrendous conduct associated with the retail-only businesses were reflected in police calls, police reports or complaints to the neighborhood police statements where one would not reasonably expect that they would be made. So with respect to the anecdotal and the code inspector said that with respect to the retail-only businesses, there were no problems with the pornographic litter, which is what counsel's mainly talking about. Also, with respect to the studies, the numerous studies that the city relied on, Mr. McLaughlin had read all of those studies and was intimately familiar with each one of them and was in a position to say that these studies don't relate to this type of business. And the use of dissimilar studies to support application of restrictions to retail-only businesses was rejected by the Fifth Circuit in Encore video. So thank you. Thank you, counsel. We appreciate the arguments of both parties. They've been very helpful. The case just argued is submitted. And we will at last get to Mejia Garcia, which we will have one counsel present in person and one by telephone from the icy climes of Oregon. That's not promising. I like the Peter one. It's dialing in. Hello, is this Henry Langer? Hello, Mr. Langer? Yes. Court is in session. I don't hear you very well. Oh, I don't have a microphone. Can you hear us now, Mr. Langer? It's better now. Mr. Langer, this is the judges of the Ninth Circuit calling. Are you ready to proceed? Yes, I am. Okay, terrific.
judges: Graber, Tallman, Clifton